UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

RONALD DAVID BROWN,

                    Plaintiff,          **No. 6:14-cv-06732(MAT)**
                                        **DECISION AND ORDER**

            -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.
─────────────────────────────────

## I.  Introduction

Represented by counsel, Ronald David Brown ("Plaintiff") brings this action pursuant to Title II of the Social Security Act, seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed.

## II.  Procedural Status

Plaintiff filed for DIB on September 7, 2011, alleging disability commencing March 11, 2010, due to carpal tunnel syndrome, bone spurs, degenerative disc disease, bilateral shoulder surgery, and rheumatoid arthritis. After the claim was denied, Plaintiff requested a hearing, which was held before administrative law judge Michael W. Devlin ("the ALJ") on March 14, 2013. See T.26-44. Plaintiff appeared with his attorney and testified, as did vocational expert Peter Manzi, D. Ed. ("the VE"). The ALJ issued an unfavorable decision on May 28, 2013, T.8-20, which became the

Commissioner's final decision after the Appeals Council denied Plaintiff's request for review. This timely action followed.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual recitations contained in the parties' briefs. The record evidence will be discussed in further detail as necessary to the resolution of the parties' motions.

## III. Standard of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

## IV. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 11, 2010, the alleged onset date, and that he meets the insured status requirements of the Act through December 31, 2015. T.13.

At step two, the ALJ found that Plaintiff has the following severe impairments: status post-left shoulder arthroscopic surgery performed on November 29, 2011; status post-right shoulder arthroscopic surgery performed on December 14, 2010; and bilateral carpal tunnel syndrome. T.13. The ALJ determined that Plaintiff's alleged obesity, back pain, and Dupuytren's contracture were not "severe" impairments, findings which Plaintiff does not challenge on appeal.

At step three, the ALJ did not consider Plaintiff's severe impairments and consequent limitations in reference to any particular listed impairment. The ALJ concluded, summarily, that Plaintiff does not have an impairment or combination of impairments that meets or medically equals of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

-3-

The ALJ then proceeded to evaluate Plaintiff's residual functional capacity ("RFC"), and determined that he has the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).[1] T.14. Specifically, Plaintiff can

> occasionally lift and/or carry up to 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk about 6 hours in an eight-hour workday; sit about 6 hours in an eight-hour workday; rarely push and/or pull less than 10 pounds with the upper extremities; and only occasionally push and/or pull 10 pounds with the lower extremities; . . . occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; never reach overhead bilaterally; frequently reach in all other directions bilaterally; [and] frequently handle and finger bilaterally. . . .

T.14. The ALJ noted that although Plaintiff "can sit/stand for 6 hours, in an eight-hour workday, he is limited to lifting and/or carrying no more than 10 pounds, so his [RFC] is assessed under the sedentary Grid Rules rather than the light Grid Rules[.]" T.14

At the fourth step, the ALJ found that Plaintiff had past relevant work as a drywall applicator (SVP 7, skilled, very heavy) and taper (dry-wall finisher) (SVP 5, skilled, medium, but actually performed by Plaintiff at the "very heavy" exertional level). T.18. The ALJ stated that because Plaintiff is limited to "less than the full range of sedentary work, with additional non-exertional

---

[1]

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

limitations," he is unable to perform any of his past relevant work. Id.

At the fifth step, the ALJ considered whether Plaintiff is able to do any other work, given his RFC, age, education, and work experience. On the alleged onset date, Plaintiff was fifty-one years-old, which the ALJ incorrectly asserted "is defined as an individual of advanced age." T.18.[2] The ALJ noted that Plaintiff has at least a high school education and is able to communicate in English. T.18. The ALJ then went on to determine that Plaintiff has acquired work skills from his past relevant work, relying on the VE's testimony that Plaintiff acquired the skill of "using a calculator" in his past work as a drywall applicator and taper. T.19. The ALJ stated that based on the VE's testimony, he concluded that Plaintiff had "acquired work skills [sic] . . . that are [sic] transferable to other occupations with jobs existing in significant numbers in the national economy." Id. The VE identified one job that the Plaintiff could perform—that of calculating machine operator (DOT 216.482-022, semi-skilled, sedentary, SVP 3). According to the VE, there are 290,000 such jobs in the national economy and 240 jobs in the Finger Lakes region. T.19. The ALJ also stated, inaccurately, that the VE had testified that Plaintiff's previous work was "so similar to the jobs [sic] recited above that

---

[2]

This is incorrect, as discussed further below. The Commissioner considers the 50-to-54-year-range to be "closely approaching advanced age." See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(d) ("closely approaching advanced age . . . [is] 50-54").

[Plaintiff] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." Id. The ALJ concluded that although Plaintiff's additional limitations do not allow him to perform the full range of sedentary work, "considering [his] age, education and transferable work skills [sic], a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.07, section 201.00(f)[3] of the Medical-Vocational Guidelines[.]" T.19.

## V.   Discussion

Plaintiff argues that the ALJ's RFC assessment is legally erroneous due to the ALJ's failure to provide good reasons for rejecting the opinion of Plaintiff's treating physician, general practitioner Julia Morgan, M.D.; that the ALJ's assessment of his credibility is too vague to permit meaningful appellate review;[4] and that the ALJ's step five analysis is legally erroneous and not supported by substantial evidence. As discussed below, the multiple errors committed by the ALJ at step five are dispositive of the parties' motions, obviating the need to consider Plaintiff's other contentions.

---

[3]     These Medical-Vocational Rules apply to individuals of advanced age, which Plaintiff is not.

[4]
The ALJ found that Plaintiff was "partially credible for the reasons explained in this decision[,]" T.15, but did not explain which of Plaintiff's statements he found credible and which he did not.

A.    **The ALJ's Step Five Determination Was Legally Erroneous and Unsupported by Substantial Evidence.**

1.    **The Step Five Burden of Proof and the Effect of the Claimant's Age**

Under the five-step sequential evaluation, the claimant generally bears the burden of proving that he is disabled, but "if the claimant shows that his impairment renders him unable to perform his past work, the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); accord Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002). Because "age is one of the factors that must be considered," the Commissioner "faces a more stringent burden when denying disability benefits to older claimants." Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990); accord Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001). If the claimant is "closely approaching advanced age (50-54), [the Commissioner] will consider that [his] age, along with a severe impairment and limited work experience, may seriously affect [his] ability to adjust to a significant number of jobs in the national economy." 20 C.F.R. § 404.1563(c). When a claimant reaches "advanced age" (55 years-old or older), the Commissioner must overcome a "higher burden . . . to deny benefits . . . ." Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993) (citing 20 C.F.R. § 404.1563(d) ("[A]dvanced age (55 or over) is the point where age

significantly affects a person's ability to do substantial gainful activity.")).

However, a claimant's acquisition of skills transferable to other work gives him "a special advantage over unskilled workers in the labor market." Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *2 (S.S.A. 1982). Thus, an ALJ can enter a finding of "not disabled" with regard to a younger claimant who has a high school education and a sedentary RFC, even if the only work he can perform is unskilled. <u>See</u> 20 C.F.R., Pt. 404, Subpt. P., App. 2, § 201.21. To find that same claimant not disabled when he is "closely approaching advanced age" or of "advanced age," the ALJ must also find that the claimant acquired skills in his past work that are transferable to other skilled or semi-skilled jobs. <u>See</u>, <u>e.g.</u>, <u>Cabrera v. Astrue</u>, No. 06 Civ. 9918(JCF), 2007 WL 2706276, at *11 & n. 11 (S.D.N.Y. Sept. 18, 2007)(citing 20 C.F.R. § 404, Subpt. P, App. 2, Table 1 ("Under the Medical-Vocational Rules, a high school graduate who is 'closely approaching advanced age' (age 50-54), is limited to sedentary work, has a high school education, and has no skills transferable from prior semi-skilled work is considered disabled.").

### 2. The VE's and Plaintiff's Testimony Concerning Transferable Skills

At the hearing, the VE classified Plaintiff's past jobs as a drywall finisher and taper. The ALJ asked the VE if there "were any transferrable skills [from those jobs] to the sedentary occupational base[.]" The VE then questioned Plaintiff as follows:

```
VE:        Okay. Did you, like, perform, like when you
           would to pick up the materials, did you have
           to, like, do any kind of calculations as to
           how much you would need? How much square
           footage you would have?
CLMT:      Yeah, I can do that.
VE:        You did do that. Did you use a calculator?
CLMT:      Yeah, I could[,] yeah.
VE:  Okay. There would be skills transferrable to using
     a calculator down to sedentary, semi-skilled jobs.
```

T.41 (emphases supplied). The VE identified one sedentary, semi-skilled job that Plaintiff could perform: calculating machine operator (DOT 216.482-022, SVP 3). T.42.

> **3.     Even if the ALJ Properly Had Classified Plaintiff as "Closely Approaching Advanced Age," a Finding of Skills Transferability Is Not Supported by Substantial Evidence.**

The ALJ correctly noted that Plaintiff had a high school education and had worked for 30 years as a drywall finisher and a painter; he stopped working March 2010, because he was physically unable to perform the work. As  stated above, the ALJ limited Plaintiff's RFC to less than the full range of sedentary work. With regard to Plaintiff's age, he was born in September 1958, making him fifty-one years old as of the onset date and fifty-four years old at the time of the hearing; therefore, he was "closely approaching advanced age." The ALJ, however, incorrectly found that Plaintiff's age made him "an individual of advanced age." T.18.[5] However, even if the ALJ properly had classified Plaintiff as

---

[5]

Plaintiff would not reach "advanced age" under the regulations until September 2015, when he turned fifty-five. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 203.00(c) ("persons of advanced age (55 and over)").

"closely approaching advanced age," there is not substantial evidence to support a finding of skills transferability, and a finding of disabled is directed under the Medical-Vocational Rules.

In his decision, the ALJ relied on the VE's questioning of Plaintiff regarding whether he had ever used a calculator in his past work as a drywall applicator and taper. T.19. The ALJ stated that based on the VE's testimony, he concluded that Plaintiff had "acquired work skills [sic] . . . that are [sic] transferable to other occupations [sic] with jobs existing in significant numbers in the national economy." Id. The ALJ's assertion that Plaintiff acquired "skills" in the plural misstates the record, because the VE only questioned Plaintiff about *one* potential skill—using a calculator. Moreover, Plaintiff's testimony about whether he had, in fact, used a calculator in his past relevant work was ambiguous: Plaintiff merely said he "can" or "could" use a calculator, which the VE interpreted as affirmatively meaning he "did" use a calculator. Unfortunately, Plaintiff's attorney did not object or attempt to correct this mischaracterization of his client's testimony.

As an initial matter, the Court questions whether the ability to use a simple calculator qualifies as a "skill" for purposes of the Commissioner's regulations. According to the Commissioner, a "skill" is

> knowledge of a work activity which requires the exercise
> of significant judgment that goes beyond the carrying out
> of simple job duties and is acquired through performance
> of an occupation which is above the unskilled level

> (requires more than 30 days to learn). It is practical
> and familiar knowledge of the principles and processes of
> an art, science or trade, combined with the ability to
> apply them in practice in a proper and approved manner.
> This includes activities like making precise
> measurements, reading blueprints, and setting up and
> operating complex machinery.

SSR 82-41, 1982 WL 31389, at *2. Even assuming that the the ALJ and

the VE were correct, neither of them engaged in the transferability

analysis required by the regulations and the applicable ruling, SSR

82-41,[6] with regard to Plaintiff's allegedly acquired "skill." For

all age classifications, including "closely approaching advanced

age," when an ALJ makes a finding that a claimant has transferable

skills, he must identify the specific skills actually acquired by

the claimant and the specific occupations to which those skills are

transferable. SSR 82-41, 1982 WL 31389, at *7. The Commissioner has

stated that transferability "is most probable and meaningful among

jobs in which: (1) the same or a lesser degree of skill is

required, because people are not expected to do more complex jobs

than they have actually performed (i.e., from a skilled to a

semiskilled or another skilled job, or from one semiskilled to

another semiskilled job); (2) the same or similar tools and

machines are used; and (3) the same or similar raw materials,

products, processes or services are involved." Id. at *5.

---

[6]    The Commissioner's rulings are binding on an ALJ. Terry v. Sullivan, 903
F.3d 1273, 1277 (9th Cir. 1990) (citing Service v. Dulles, 354 U.S. 363, 388
(1957)).

Transferability of skills "depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1). Nonetheless, even a cursory review of the job descriptions in the DOT reveals that transferability of skills is not "probable" or "meaningful" between Plaintiff's past relevant work and the work of a calculator machine operator. First, Plaintiff's past jobs (drywall applicator and a taper) are both in the "Plasterers and Related Occupations" group, while the position of calculator machine operator is in the "Accounting and Statistical Clerks" group. Second, there is no overlap between the tools, machines, materials, products, processes or services used or produced by the two groups of jobs. According to DOT 842.684-014, a drywall applicator

> [i]nstalls plasterboard or other wallboard to ceiling and interior walls of building, using handtools and portable power tools: Installs horizontal and vertical metal or wooden studs for attachment of wallboard on interior walls, using handtools. Cuts angle iron and channel iron to specified size, using hacksaw, and suspends angle iron grid and channel iron from ceiling, using wire. Scribes measurements on wallboard, using straightedge and tape measure, and cuts wallboard to size, using knife or saw. Cuts out openings for electrical and other outlets, using knife or saw. Attaches wallboard to wall and ceiling supports, using glue, nails, screws, hammer, or powered screwdriver. Trims rough edges from wallboard to maintain even joints, using knife. Nails prefabricated metal pieces around windows and doors and between dissimilar materials to protect drywall edges. Work is usually performed with other workers. May remove plaster, drywall, or paneling during renovation project, using crowbar and hammer.

DOT 842.684-01.[7] By contrast, a calculating-machine operator

---

[7]     http://www.occupationalinfo.org/84/842684014.html (last accessed Nov. 18, 2015).

[c]omputes and records statistical, accounting and other
numerical data, utilizing knowledge of mathematics and
using machine that automatically performs mathematical
processes, such as addition, subtraction, multiplication,
division, and extraction of roots: Calculates
statistical, accounting, and other numerical data, using
calculating machine, and posts totals to records, such as
inventories and summary sheets. May verify computations
made by other workers. May be designated according to
subject matter as Formula Figurer (paint & varnish);
Premium-Note Interest-Calculator Clerk (insurance). May
compute and record inventory data from audio
transcription, using transcribing machine and calculator,
and be designated Inventory Transcriber (business ser.).
May be designated according to type of computations made
as Weight Calculator (ship-boat mfg.).

DOT 216.482-022.[8]

The ALJ found that Plaintiff acquired transferable "skills" in his past work; this finding was critical to the ALJ's determination that Plaintiff was not disabled. However, the ALJ's transferability analysis is non-existent, and the VE's sparse testimony regarding transferability was confusing and vague: "There would be skills transferrable to using a calculator down to sedentary, semi-skilled jobs." T.41. It is unclear what the VE meant by this statement. The VE also provided no testimony regarding the duties Plaintiff would be expected to perform as a "calculator machine operator." The Court cannot find substantial evidence to conclude, particularly without any discussion of specific skills required, that the jobs of drywall applicator and taper are sufficiently similar to that of a calculator machine

---

[8]   http://www.occupationalinfo.org/21/216482022.html (last accessed Nov. 18, 2015).

operator to impart transferable skills. Indeed, courts have found that jobs in the same general classification in the DOT do not necessarily share transferable skills. <u>See</u>, <u>e.g.</u>, <u>Dikeman</u>, 245 F.3d at 1187 ("The Commissioner contends that this omission was harmless error, however, because the sedentary, semi-skilled cashiering jobs identified by the VE and the ALJ were the same as plaintiff's past job as a grocery checker, just at a lighter exertional level. This contention is without support in the record."); <u>Pyles v. Bowen</u>, 849 F.2d 846, (4th Cir. 1988) ("It strains credulity to conclude, particularly without any discussion of specific skills, that a sales clerk position is sufficiently similar to that of a retail store manager to impart transferable skills.").

> **4. The ALJ Misapplied the "Advanced Age" Regulations and SSR 82-41.**

Even if the ALJ had made a sufficient finding of transferability, which he did not, that "alone, does not satisfy the [Commissioner]'s regulations requiring very little vocational adjustment" for claimants of advanced age. <u>Nielsen v. Sullivan</u>, 992 F.2d 118, 1120 (10th Cir. 1993) (citing <u>Terry</u>, 903 F.2d at 1279 ("Not only must [a claimant's] skills be transferable, there must be little vocational adjustment required. . . ."); <u>Burton v. Sec'y of Health & Human Servs.</u>, 893 F.2d 821, 824 (6th Cir. 1990) ("It is not enough . . . that the claimant possess transferable skills; their transfer must require little if any vocational adjustment.")). Having found (albeit incorrectly) that Plaintiff

was of "advanced age," the ALJ was required by the Commissioner's regulations to address transferability of skills as follows:  "In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry[,]" 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f), and the "semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." SSR 82-41, 1982 WL 31389, at *5.

As noted above, the VE identified one job that a person with Plaintiff's RFC and vocational profile could perform—that of calculating machine operator (DOT 216.482-022). The ALJ stated, inaccurately, that the VE had testified that Plaintiff's previous work was "so similar to the jobs [sic] recited above that [Plaintiff] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." T.19. The VE did not provide any such testimony. Significantly, the ALJ does not provide a page citation to the hearing transcript in support of this assertion. Furthermore, the ALJ mischaracterized the contents of his own decision, asserting that he had recited multiple jobs identified by the VE when, in fact, he had only referred to one job, since the VE had only

identified one potential job at the hearing. Thus, although the ALJ purported to make a "vocational adjustment" finding, it was unsupported by any evidence in the record.

In short, the ALJ applied the incorrect standard to Plaintiff's claim, and then erroneously applied that incorrect standard to a conclusion not supported by substantial evidence in the record.

**B.    Remedy**

The Court has addressed the ALJ's application of the "advanced age" regulations and ruling in some detail because, although Plaintiff was not of "advanced age" at the time of the hearing, he became of "advanced age" during the pendency of his request for review to the Appeals Council and is now fifty-seven years-old. A remand at this juncture therefore would require the Commissioner to demonstrate that Plaintiff would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. Such a finding is not possible given Plaintiff's RFC, age, vocational profile, and the VE's testimony.

Under these circumstances, a remand for the calculation of benefits is warranted because further administrative proceedings or another hearing would serve no useful purpose. See Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980). Accordingly, the Court reverses the Commissioner's decision and directs that the matter be remanded solely for calculation and payment of benefits.

## VI.  Conclusion

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law and was not supported by substantial evidence. Accordingly, the Commissioner's determination is reversed, and the matter is remanded for calculation and payment of benefits. Defendant's Motion for Judgment on the Pleadings is denied, and Plaintiff's Motion for Judgment on the Pleadings is granted. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated:     November 20, 2015
           Rochester, New York.